IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN PALAN,<br>    Plaintiff,<br><br>    v.<br><br>INOVIO PHARMACEUTICALS, INC.;<br>PETER KIES; J. JOSEPH KIM;<br>THOMAS KIM; AVTAR DHILLION; and<br>JEFFREY RICHARDSON,<br>    Defendants. | CIVIL ACTION<br><br>NO.  14-5054 |

## MEMORANDUM OPINION

Plaintiff Brian Palan brings this action under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* against Defendants Inovio Pharmaceuticals, Inc. ("Inovio"); Peter Kies, Inovio's Chief Financial Officer; Thomas Kim, its General Counsel; and Jeffrey Richardson, its Senior Director of External Relations and Human Resources Director (collectively, the "Defendants").[1] Palan claims that the Defendants: (1) unlawfully interfered with his FMLA rights; and (2) unlawfully retaliated against him by terminating his employment in violation of the FMLA.

Before the Court is the Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Defendants seek judgment as matter of law, *inter alia*, on the ground that Palan is not an "eligible employee" under the FMLA. For the reasons that follow, the Defendants' motion will be granted.

---

[1] On February 20, 2015, the Court granted the Defendants' Motion to Dismiss in part dismissing Defendants J. Joseph Kim and Avtar Dhillion. ECF No. 21 at 6-7.

I.  **BACKGROUND**

   A.  *Factual History*

Inovio is a Delaware corporation that has two locations: one in Pennsylvania and another in California. Kim Decl. ¶ 2. Brian Palan is a Pennsylvania resident and the former Informational Technology ("IT") Manager at Inovio. Stipulated Facts Submitted in Connection with Defendants' Motion for Summary Judgment ("SF") ¶ 1.

When Palan was hired, he was provided with Inovio's employee handbook. Opp'n at 11; *see also* Opp'n Ex. F. The handbook specifically states that Inovio employees have the rights and protection of the FMLA. *See* Opp'n Ex. F at 43 ("The Company recognizes that a leave of absence from active employment may be necessary for family or medical reasons. The following leave policy complies with the provisions of the Family and Medical Leave Act of 1993 'FMLA.'"). Palan has no recollection of ever having read the handbook. J.A. 19.

In April 2014, Palan was diagnosed with diverticulitis. J.A. 10-11 (Palan Dep.). He informed management of his condition, he was hospitalized for treatment, J.A. 116, and he then returned to work. J.A. 30 (Palan Dep.). A few weeks later, a follow-up CT scan revealed that his condition had not improved. J.A. 118. In an e-mail to Inovio management, he described his condition as a "ticking time bomb that could 'pop' at any time" and result in the "same life-threatening situation I was in at the hospital a month ago." *Id.* His physician recommended surgery, but Palan told his bosses that he wanted to do "anything . . . to safely avoid surgery." *Id.* He sought a second opinion from a gastrointestinal specialist who agreed that surgery was medically necessary and should be scheduled on an exigent basis. J.A. 20-21 (Palan Dep.). Palan scheduled his surgery for May 28, 2014. J.A. 91. Although he does not recall whether he ever formally requested a leave of absence, he notified the Defendants of his scheduled surgery,

2

his expected last day of work, and his expected recovery time. J.A. 13, 44 (Palan Dep.); J.A. 119-20.

Before going out, Palan met with Richardson to "discuss his medical leave and to obtain information regarding short-term disability benefits." J.A. 91. The only thing Richardson discussed with Palan during this conversation was Palan's eligibility for short-term disability. J.A. 25-26 (Palan Dep.). In his declaration attached to his summary judgment briefing, Palan explains that "I expressed concern for my job because I would be recovering from surgery during a critical period in the lead-up to the execution of" an office move between Inovio's then-location in Blue Bell, Pennsylvania, to a new office space in Plymouth Meeting, Pennsylvania. Palan Decl. ¶ 17. Also in the meeting, Richardson assured Palan that he "had nothing to worry about," and that his job would be waiting for him when he returned. *Id.*; *see also* J.A. 28-29, 31 (Palan Dep.). FMLA leave was not discussed in this meeting. Palan had surgery on May 28, 2014 and recuperated during his leave of absence. J.A. 31 (Palan Dep.).

While he was out, Inovio moved its office. The move involved significant work to its IT systems, work which was done with the help of a third-party contractor. J.A. 92. Palan tried to help with the IT move to the extent that he was medically able. *Id.* Inovio claims that during this time it learned that Palan had not adequately prepared the company for the move, *see* J.A. 100-01, an allegation that Palan denies. Opp'n at 2.

On July 16, 2014, upon his scheduled return to work, Palan was terminated. J.A. 92. At no time during his termination meeting was there any mention of any performance deficiency by Palan. *Id.*

II.   LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to

3

judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 345 (2010) (citations and internal quotation marks omitted).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**III.    DISCUSSION**

As a threshold matter, Defendants assert, and Palan does not dispute, that Palan is not eligible for FMLA relief under a strict reading of the statute because Inovio employed fewer than fifty employees within a seventy-five–mile radius at its Pennsylvania worksite.  Mot. at 10; *see Leese v. Adelphoi Vill., Inc.*, 516 F. App'x 192, 193 (3d Cir. 2013) (stating that if an employer employs fewer than fifty employees within a seventy-five-mile radius, the employee "is not an 'eligible employee' entitled to protection under the FMLA" (citing 29 U.S.C. § 2611(2)(B)(ii))).  In May 2014, Inovio employed thirty-eight employees at its Pennsylvania office and within seventy-five miles thereof.  SF ¶ 3.  In July 2014, Inovio employed forty employees at its Pennsylvania office and within seventy-five miles thereof.  *Id.* ¶ 4.

Nevertheless, Palan contends that his FMLA claims are saved by the common law doctrine of equitable estoppel, Opp'n at 11, which is available to a plaintiff in an FMLA action. *See Leese*, 516 F. App'x at 193 (noting that "the District Court correctly found that equitable estoppel is available in the FMLA") (citing *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554-55 (6th Cir. 2009); *Reed v. Lear Corp.*, 556 F.3d 674, 678 (8th Cir. 2009); *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358-59 (5th Cir. 2006); *Woodford v. Cmty. Action of Greene Cnty., Inc.*, 268 F.3d 51, 57 (2d Cir. 2001); *Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 582 (7th Cir. 2000)).  To be advantaged by the doctrine, a plaintiff must show: "(1) a

4

misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *Leese*, 516 F. App'x at 194 (citing *United States v. Asmar,* 827 F.2d 907, 912 (3d Cir. 1987)).

### A. *Misrepresentation*

Misrepresentation is "not whether the employer made an explicit promise to a particular employee, but whether the defendant[] ha[s] engaged in affirmative conduct . . . that was designed to mislead or was unmistakably likely to mislead a plaintiff." *Myers v. Tursso Co.*, 496 F. Supp. 2d 986, 997 (N.D. Iowa 2007) (citing *Redman v. U.S. W. Bus. Res., Inc.,* 153 F.3d 691, 695 (8th Cir. 1998) (FLSA case) (citations and internal quotation marks omitted)). Here, where Inovio's handbook included a statement that the company's leave policy "complies with the provisions of the [FMLA]," it is doubtless likely that an employee would be misled into believing he was an eligible employee for the purposes of taking FMLA leave. *See Dobrowski*, 571 F.3d at 556-57 ("[A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under FMLA, and has reason to believe that the employee will rely on it, may be estopped to assert a defense of non-coverage."); *see also Myers*, 496 F. Supp. 2d at 998 (a similar statement in the employee handbook held sufficient to satisfy the misrepresentation element of FMLA equitable estoppel claim). Accordingly, Plaintiff has satisfied the misrepresentation prong.[2]

### B. *Detrimental Reliance*

Palan has not, however, provided evidence that he relied upon the misrepresentations in the Inovio handbook, and that such reliance caused him detriment. *Renart v. Chartwells*, 122 F. App'x 559, 561 (3d Cir. 2004) ("Detrimental reliance is a necessary element of a claim for

---

[2] Palan also contends that the representations by Richardson in the May 19, 2014, meeting, *i.e.*, that Palan "had nothing to worry about" and that his job would be "waiting for [him] when he got back" are qualifying misrepresentations. They are not. While the statements may have, ultimately turned out to be untrue, they did not concern whether Palan was FMLA eligible.

5

equitable estoppel."); *see also Sinacole v. iGate Capital*, No. 04-0921, 2006 WL 3759744, at *7 (W.D. Pa. Dec. 19, 2006), *aff'd*, 287 F. App'x 993 (3d Cir. 2008).

*Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551 (6th Cir. 2009), relied upon by the Defendants, is instructive here. In *Dobrowski*, in July 2004, the plaintiff, in consultation with his physician, elected to schedule surgery to treat his epilepsy for October 2004. At that time, he informed his supervisor about the procedure and all parties assumed the employer would grant him time off with the operation. One month before the surgery, the employer's president gave the plaintiff a form headed "APPLICATION FOR LEAVE OF ABSENCE UNDER THE FMLA," which the plaintiff completed and returned. Ten days before the surgery, the president wrote the plaintiff a letter which contained the statement that "[p]ursuant to the Family and Medical Leave Act, [the employer] will leave [the plaintiff's] position open for at least twelve (12) weeks" and included with the letter the Department of Labor's "Employer Response to Employee Request for Family or Medical Leave" form that summarized the plaintiff's application, indicated that he was an eligible employee, and confirmed that the company was providing him with FMLA leave. *Id.* at 553. After the plaintiff took the leave of absence, his employment was terminated and he filed suit alleging violations of the FMLA and asserted an equitable estoppel theory because the parties agreed that the employer did not have the requisite 50 employees within 75 miles of the plaintiff's worksite. *See id.* at 554.

The Sixth Circuit agreed that the employer's actions amounted to a "definite misrepresentation of [the plaintiff's] eligibility," but he failed to satisfy the detrimental reliance element because there was no evidence in the record to show that he "change[d] his position" in reliance on the belief that his leave would be FMLA-protected:

> Had he relied on the erroneous representations, one would expect [the plaintiff] to
> be able to point to some action or statement that indicated that *his decision to
> have the surgery was contingent on his understanding of his FMLA status*; or

> perhaps evidence that raises an inference of such contingency—for example, a record that he made an inquiry as to his rights, asked for written confirmation of his leave arrangement, or changed his behavior after being told he was eligible. At the very least, [he] could have placed an affidavit in the record stating that he would have forgone the surgery but for his belief that his job status was protected by the FMLA. But none of this is present in the record.
>
> If anything, the record shows that [the plaintiff] had already decided on and scheduled the surgery by the time he was informed of his eligibility.

*Id.* at 557-58 (emphasis added) (citations omitted).  The record contained no evidence of a discussion of the plaintiff's FMLA eligibility prior to the application for FMLA leave filed three weeks prior to his surgery, well after he informed the company about his planned absence.  And an email he sent referencing his "operation coming up" did not ask for permission to take leave, discuss his rights under the FMLA, or indicate a willingness to delay or reschedule depending on his legal status.  The court held that it was his burden on summary judgment to produce evidence supporting his estoppel claim, "and the record must contain evidence permitting a finding" not just that he *could* have rescheduled this elective surgery, but that "he *would* have."  *Id.* at 558.  "[T]he most direct statement in the record as to [the plaintiff]'s intent," the court noted, "that he 'got the okay' and scheduled the surgery—suggests that at the time he was waiting only on his doctor's permission and not assurance of legal protection."  *Id.*  Because the plaintiff had provided no evidence of detrimental reliance, his equitable estoppel argument failed.  *Id.*

  Here, like the plaintiff in *Dobrowski*, Palan has proffered no evidence in the record to establish that he "change[d] his position" in reliance on a belief that his leave would be protected under the FMLA.  Inovio contends that Palan "admits he never even read Inovio's Handbook thereby making it an absolute impossibility that he relied on it at all, let alone to his detriment."  Defs.' July 27, 2015, Letter Brief at 1; *see also* J.A. 19 (Palan Dep.).  Palan can point to no action or statement that indicated that his decision to have the surgery was contingent on his understanding of his FMLA status, especially in light of the fact that he admitted he had no

7

choice but to take a leave of absence, regardless of his FMLA eligibility, because of his "life-threatening situation." J.A. 21, 118. *Renart*, 122 F. App'x at 561 (3d Cir. 2004) (holding that Plaintiff's FMLA claim failed under equitable estoppel because she testified that she took time off only because her supervisor had told her that she could, not because she believed she was eligible for family leave, which foreclosed the argument that she had relied on any of the Defendant's representations about her eligibility for leave).[3]

The record shows that Palan would have taken leave regardless, and he cannot show that he "relied" on any misrepresentation of Inovio to his detriment in deciding to take a leave of absence. His equitable estoppel claim therefore fails and, accordingly, the motion for summary judgment shall be granted.

An appropriate Order follows.

Dated: **August 26, 2015**

                                             **BY THE COURT:**

                                             **/S/WENDY BEETLESTONE, J.**

                                             **WENDY BEETLESTONE, J.**

---

[3] Palan's reliance on another Sixth Circuit decision, *Tilley v. Kalamazoo County Road Commission*, 777 F.3d 303 (6th Cir. 2015), is misplaced. The plaintiff in that case presented evidence, in the form of a sworn affidavit, that he reasonably relied on the statement in the employee manual that full-time employees like himself were covered under the FMLA. The Sixth Circuit noted that the plaintiff "did precisely what the employee in *Dobrowski* failed to do: he pointed evidence—his sworn affidavit—that he sought medical treatment prior to completing his assignment *because the unqualified and unambigious statements in the Manual led him to believe that he was covered by the FMLA.*" *Id.* (emphasis added). Because of this, the court held that there was a material factual dispute on the reasonable reliance element of the plaintiff's equitable estoppel claim. Palan has pointed to no such evidence in the record here.